IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| NATHAN E. GUNDY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CV 318-071 |
| ) | (Formerly CR 313-004) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner, an inmate at the Federal Correctional Institution in Estill, South Carolina, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Respondent moves to dismiss the § 2255 motion. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 4), Petitioner's § 2255 motion be **DISMISSED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.    **BACKGROUND**

A.    **Pretrial and Trial Proceedings**

On May 8, 2013, the grand jury in the Southern District of Georgia charged Petitioner and one co-defendant in a three-count indictment. Petitioner was named in Count One, possession of a firearm by a convicted felon, and Count Three, possession of stolen firearms. United States v. Gundy, CR 313-004, doc. no. 1 (S.D. Ga. May 8, 2013) (hereinafter "CR 313-004"). The Court appointed attorney Tina E. Maddox under the Criminal Justice Act to

represent Petitioner. Id., doc. no. 15. Ms. Maddox filed eighteen motions on Petitioner's behalf on May 31, 2013. Id., doc. nos. 18-22, 24-25, 27-37. However, on June 10, 2013, Petitioner submitted a *pro se* motion for discovery, which prompted an *ex parte* hearing with the Court on July 12, 2013, to explore the attorney-client relationship between Petitioner and Ms. Maddox. Id., doc. no. 222, p. 3. After concluding there was no basis to substitute counsel, the Court explained Petitioner had three options: continue with Ms. Maddox, use his own money to hire an attorney, or represent himself. Id. at 11-13, 40, 42. When Petitioner refused to provide a definitive answer as to how he wished to proceed, the Court ordered Ms. Maddox to continue with her representation. Id. at 38-42.

One week later, Petitioner filed a motion to change counsel, which the Court denied in a written, *ex parte* order explaining the motion recounted the same information presented at the July 12th hearing and still did not satisfy good cause to change counsel. CR 313-004, doc. nos. 62, 63. Because Petitioner refused to make a definitive choice about proceeding *pro se*, the Court directed Ms. Maddox to continue her representation. Id., doc. no. 63, p. 5. Petitioner continued to file *pro se* motions expressing his dissatisfaction with counsel, and Ms. Maddox filed a motion for a psychiatric examination of Petitioner. Id., doc. nos. 71, 74. In the meantime, the case was set for a jury trial before United States District Judge Dudley H. Bowen, Jr., on August 28, 2013. Id., doc. no. 69.

Judge Bowen granted a joint motion to continue the trial and convened a second *ex parte* hearing on August 27, 2013, to explore the attorney-client relationship between Petitioner and Ms. Maddox, as well as to address the outstanding motions filed by Petitioner

and Ms. Maddox. Id., doc. nos. 79, 83; doc. no. 223 (Second *Ex Parte* Hr'g). After an extended colloquy with Petitioner, Judge Bowen excused Ms. Maddox from her representation, allowed Petitioner to proceed *pro se*, and called in counsel for the government to proceed with a pretrial conference. Second *Ex Parte* Hr'g 3, 7-24. After the hearing, Judge Bowen set the trial for October 22, 2013, and denied the motion for a psychiatric examination. CR 313-004, doc. nos. 84, 87.

Judge Bowen convened a third hearing on October 10, 2013, concerning Petitioner's decision to proceed *pro se* because Petitioner refused to sign a waiver of counsel. Id., doc. nos. 100, 224. At that hearing, Petitioner also refused to stipulate he had a prior felony conviction with respect to the felon in possession charge in Count One. Doc. no. 224, pp. 21-24. After the hearing, Judge Bowen memorialized Petitioner's decision to proceed *pro se* and confirmed Petitioner "has validly waived his constitutional right to counsel as guaranteed by the Sixth Amendment. See Faretta [v. California, 422 U.S. 806,] at 832-36 [1975]." Id., doc. no. 99, p. 4.

Amidst the flurry of Petitioner's "sovereign citizen" motions, (see, e.g., id., doc. nos. 89-91), and additional requests to continue the trial, (id., doc. no. 125), Judge Bowen reset the jury trial for November 5, 2013, and then again for December 2, 2013. Id., doc. nos. 101, 131. In the meantime, Petitioner continued filing "sovereign citizen" motions, resulting in a comprehensive order from Judge Bowen denying the motions and cautioning Petitioner not to pursue such frivolous arguments before the Court or the jury:

> Further, Defendant has been warned before, and he is hereby warned again, that the Court will not entertain any "sovereign citizenship" arguments, and equally frivolous, any argument that Defendant is not subject to the United

> States Constitution but to some "Zodiac Constitution" (doc. no. 124, at 1). Most importantly, these topics will **not** be mentioned to the jury. The trial of this case will involve only matters pertaining to the facts of the crimes for which Defendant has been indicted and the law relevant to those crimes. Should Defendant run afoul of this warning, should he try to inject his theories of "sovereign citizenship" or any other frivolous and non-sensical gibberish in the trial before the jury, **Defendant runs the risk of being removed from the courtroom and tried in absentia**. See Fed. R. Crim. P. 43(c)(1)(C).

Id., doc. no. 133, p. 4 (emphasis in original and footnote omitted).

On the day of trial, Defendant refused to wear civilian clothes and refused the assistance of standby counsel. Id. doc. no. 219, (Trial Tr.), pp. 11, 14-15. Judge Bowen again warned Petitioner about his behavior in the courtroom and cautioned him that he would be removed from the courtroom if he persisted with his disruptive behavior and frivolous legal theories. Id. at 9-18. During the two-day trial, the jury heard evidence that after a high-speed chase and foot pursuit of Petitioner and his co-defendant, officers discovered two firearms on the floor of the passenger seat of the car, the grip of one firearm contained Petitioner's DNA, both firearms had moved in interstate commerce, and both firearms had been stolen. Id. at 57-62, 64-65, 76, 104, 106, 129, 140-43, 160-62. The government introduced into evidence certified copies of Petitioner's prior felony convictions. Id. at 162-63, 188. The jury convicted Petitioner on the felon in possession charge (Count One) and acquitted him on the possession of stolen firearms charge (Count Three). CR 313-004, doc. no. 157. Judge Bowen denied Petitioner's post-trial motions by written order dated January 22, 2014. Id., doc. no. 170. Judge Bowen twice offered to appoint counsel to represent Petitioner at sentencing, but Petitioner declined. Trial Tr. 200, 208.

### B. Sentencing

The United States Probation Office prepared a Presentence Investigation Report ("PSI"). As explained in the PSI, Petitioner had seven prior Georgia burglary convictions. PSI ¶¶ 29, 31, 36, 38. Because burglary is classified as a "violent felony" under the Armed Career Criminal Act ("ACCA"), and because Petitioner was convicted of the felon in possession offense under 18 U.S.C. § 922(g), he was subject to the enhanced mandatory minimum sentence of fifteen years in prison. See 18 U.S.C. §§ 924(e)(1) & 924(e)(2)(B)(ii); PSI ¶ 69. The PSI set the advisory Guidelines range at 262 to 327 months. PSI ¶ 70.

Petitioner raised three objections to the PSI, one of which was that the armed career criminal enhancement should not count burglaries of businesses and without his prior convictions for burglarizing businesses, he did not have the requisite number of violent felonies to qualify for the fifteen-year mandatory minimum. See PSI Add.; CR 313-004, doc. no. 218, (Sent. Tr.), pp. 3-6. During consideration of one of Petitioner's objections regarding an enhancement for possession of stolen firearms, (PSI ¶ 18), Petitioner repeatedly interrupted Judge Bowen, and despite Judge Bowen's warning Petitioner would be removed if he continued with his interruptions, Petitioner persisted. Sent. Tr. 41-44. Judge Bowen had the Marshals remove Petitioner. Id. at 43-44.

During Petitioner's absence, Judge Bowen overruled the first objection, sustained the second objection related to possession of firearms in relation to another felony offense, (PSI ¶ 19), and overruled the armed career criminal objection on the basis that burglaries are crimes of violence whether they occur at a residence or another structure such as the businesses burgled by Petitioner. Sent. Tr. 47-49. Petitioner returned to the courtroom, and

Judge Bowen summarized his rulings on the PSI objections. Id. at 55-57. In accordance with his rulings on the objections, Judge Bowen reduced the advisory Guidelines range to 235 to 293 months and after hearing from Petitioner in mitigation, sentenced him to 288 months in prison. Id. at 58-59, 62; CR 313-004, doc. no. 197.

### C.     Direct Appeal

Petitioner appealed, (CR 313-004, doc. no. 205), and the Eleventh Circuit appointed the Federal Public Defender Program, Inc., (FPD) to represent him. The FPD attorney, Ms. Kaplan, raised five issues in the appeal: (1) Petitioner was denied a fair trial and had his Sixth Amendment right to counsel violated because he was not appointed new counsel; (2) Petitioner did not knowingly and voluntarily waive his right to counsel because the Faretta warnings were inadequate, a problem compounded by the failure to appoint standby counsel and Petitioner's later removal from sentencing; (3) failure to grant the motion for psychiatric evaluation was an abuse of discretion; (4) Petitioner was deprived of a fair trial because the Court did not explain the purpose of stipulating to being a convicted felon and then permitted irrelevant and inflammatory testimony about Petitioner's prior imprisonment and supervision on parole; and, (5) Petitioner was improperly sentenced as an armed career criminal because, for multiple reasons, his prior Georgia burglary convictions did not provide the requisite three predicate violent felonies. (Doc. no. 4-1, United States v. Gundy, No. 14-12113 (11th Cir. May 18, 2015).) The government filed a response brief. (Doc. no. 4-2.) Ms. Kaplan filed a reply brief. (Doc. no. 4-3.)

The Eleventh Circuit heard oral argument and affirmed Petitioner's conviction and sentence in a published opinion. United States v. Gundy, 842 F.3d 1156 (11th Cir. 2016).

The appellate court summarized, "Gundy makes several arguments challenging the validity of his § 922(g) conviction. After our review of the record, we find that all of Gundy's arguments are without merit and affirm Gundy's conviction." Id. at 1159. The decision performs an exhaustive analysis of the only remaining sentencing issue - "whether the district court erred in concluding that Gundy's prior Georgia burglary convictions qualified as violent felonies under the ACCA." Id.

In a decision addressing both Mathis v. United States, 579 U.S. -, 136 S. Ct. 2243 (2016) and Descamps v. United States, 570 U.S. 254 (2013), the Eleventh Circuit concluded Petitioner's prior Georgia burglary convictions qualified as violent felonies under the enumerated crimes clause of the ACCA, and therefore he was properly sentenced as an armed career criminal. Gundy, 842 F.3d at 1169. The United States Supreme Court denied the petition for writ of certiorari. Gundy v. United States, 138 S. Ct. 66 (U.S. 2017).

### D.     § 2255 Proceedings

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, arguing, first, his Sixth Amendment rights were violated when Judge Bowen "involuntarily removed [Petitioner] from the courtroom without appointing standby counsel to represent him in his absence." (Doc. no. 1, p. 4; doc. no. 1-1, pp. 2-6.) The second and third claims are but a variation on the theme of the first claim: Petitioner was denied counsel at an unspecified "critical stage of trial." (Doc. no. 1, pp. 5, 7; doc. no. 1-1, pp. 6-12.) In his fourth claim, Petitioner challenges his ACCA sentence. (Doc. no. 1, p. 8; doc. no. 1-1, pp. 12-21.) In his reply brief, Petitioner also argues Judge Bowen should have granted the

7

request for a psychiatric evaluation before accepting Petitioner's decision to proceed *pro se*. (Doc. no. 6, pp. 5-8.)

Respondent moves to dismiss the § 2255 motion because the Eleventh Circuit has already considered and rejected Petitioner's claims on direct appeal, and the claims are therefore barred from consideration again in these collateral proceedings. (Doc. no. 4.) Moreover, the government argues, even if the Court were to find a claim in the § 2255 motion is significantly different from the claims raised on direct appeal, any such claim must be dismissed because it could have been raised on direct appeal, and is now, therefore, procedurally defaulted. (See id.)

## II. STANDARD

A prisoner may move under 28 U.S.C. § 2255 to vacate, set aside, or correct a federal sentence imposed in violation of the Constitution or laws of the United States, imposed by a court lacking jurisdiction, exceeding the maximum authorized by law, or otherwise subject to collateral attack. However, the collateral relief available under § 2255 is limited, as the statute "does not provide a remedy for every alleged error in conviction and sentencing." Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014). That is, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted). "Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding." Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Id.

"Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.' " Lynn, 365 F.3d at 1232. The procedural bar to claims which could have been raised on direct appeal, but were not, may be avoided if the petitioner establishes one of two exceptions: (1) cause for the default and actual prejudice from the alleged error, or (2) "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Mills, 36 F.3d at 1055-56 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623-24 (1998) (citation omitted). As the Supreme Court emphasized, "The miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" McQuiggin v. Perkins, 569 U.S. 383, 394-95 (2013) (emphasis added).

"Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted, especially when . . . he already has had a fair opportunity to present his federal claims to a federal forum." United States v. Frady, 456 U.S. 152, 164 (1982). Consequently, "[o]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." Stoufflet v. United States, 757 F.3d 1236, 1239 (11th Cir. 2014) (citation omitted); see also United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) (same); White v. United States, 371 F.3d 900, 902 (7th Cir. 2004) ("[W]e do not see how a federal prisoner--

9

who must file his motion for relief under 2255 in the very court that convicted him--can be allowed to do so if all he is doing is rehashing a claim that had been rejected on the direct appeal.").

Nor will the Court reconsider a previously raised claim where it is merely a re-characterization of an issue raised on direct appeal. Nyhuis, 211 F.3d at 1343. The Court can employ its discretion in deciding whether a claim has previously been raised. Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . [or] be supported by different legal arguments . . . or be couched in different language . . . or vary in immaterial respects" (internal citations omitted)), *superseded by statute on other grounds*, 28 U.S.C. §§ 2244(b), 2255(h). In sum, to obtain review in this § 2255 proceeding of a previously raised claim, Petitioner must show an intervening change in law since his appeal was decided and that a "complete miscarriage of justice" would occur if the claim is not considered in these proceedings. Davis v. United States, 417 U.S. 333, 346-47 (1974).

### III. DISCUSSION

The motion to dismiss must be granted because the claims raised by Petitioner in his § 2255 motion have already previously been heard and rejected on direct appeal. As set forth above, Petitioner's choice to proceed *pro se* was a hotly contested issue. Petitioner had multiple hearings before two different judges concerning his attorney-client relationship with Ms. Maddox and his options should he not want to continue with her as his attorney. The hearings were transcribed, and the results of the hearings were memorialized in multiple written orders.

When Ms. Kaplan appealed on Petitioner's behalf, the initial brief specifically argued Petitioner's Sixth Amendment right to counsel was violated when the district court (1) did not appoint a new attorney after Petitioner expressed his dissatisfaction with Ms. Maddox, (2) failed to provide proper Faretta warnings, and (3) compounded the problem by failing to appoint standby counsel to assist Petitioner when he continued to express confusion and represent Petitioner's interests after he was removed from the courtroom during sentencing. (See doc. no. 4-1.)  These appellate arguments cover the waterfront of Petitioner's current Sixth Amendment claims.  The appellate briefing contained an exhaustive recitation of the proceedings in the district court and the record before the Eleventh Circuit contained not only the numerous orders memorializing the proceedings at issue, but also the hearing transcripts. Likewise, the appellate briefing also extensively argued Petitioner was illegally sentenced because his prior Georgia burglaries did not qualify as violent felonies under the ACCA. (See id.)  The government responded with its own extensive brief, (doc. no. 4-2), to which Ms. Kaplan replied, (doc. no. 4-3).  The appellate court heard oral argument.  See Gundy, 842 F.3d at 1159.

In a published opinion, the Eleventh Circuit specifically stated that "all of Gundy's arguments" challenging the validity of his conviction "are without merit." Id. at 1160.  The appellate court also conducted an extensive review of the Georgia burglary statute, applying the relevant Supreme Court case law, and determined Petitioner was appropriately sentenced under the ACCA.  Id. at 1161-70.  Petitioner claims in his initial § 2255 motion none of his claims were presented in federal court.  (Doc. no. 1, p. 9.)  However, once Respondent filed

its motion to dismiss providing the documentation the claims had been raised, Petitioner's argument in response conceded the point.

For example, Petitioner concedes his arguments concerning his Sixth Amendment right to counsel have previously been raised when, in his reply brief, he points to the oral argument on his appeal in support of his current arguments.  (Doc. no. 6, p. 5.)  As to the sentencing argument regarding the ACCA, Petitioner states, "Yes while it is true, [Ms. Kaplan] on petitioner case did submit and explain these issues at hand, the courts still went their own opinions instead of the law set forth."  (Id. at 10.)  Petitioner then proceeds to argue why he thinks the Eleventh Circuit got it wrong.  (Id. at 10-16.)  Petitioner does not argue any intervening change in the law, let alone a retroactive change in the law that would render appellate consideration of Petitioner's claim incorrect as a matter of constitutional law or a complete miscarriage of justice.  See Stoufflet, 757 F.3d at 1242.  He simply rehashes the arguments already rejected on direct appeal, an approach which does not entitle Petitioner to relief.  See Nyhuis, 211 F.3d at 1343 ("The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal.")

There can be no doubt Petitioner's current issues regarding his representation and the appropriateness of his ACCA sentence have been raised and rejected.  "Presented is presented."  Stoufflet, 757 F.3d at 1242 (citation omitted).  Although Petitioner may disagree with the results of his direct appeal, "he already has had a fair opportunity to present his federal claims to a federal forum."  Frady, 456 U.S. at 164.  Petitioner has not argued, and the Court's review of the record does not reveal, any exception to lift the bar prohibiting review in these § 2255 proceedings, and the motion to dismiss should be granted.

For the sake of completeness, the Court also notes to the extent Petitioner attempts to amplify or tweak his appellate arguments in these proceedings, such claims are barred because mere re-characterization of a previously presented claim does not suffice. Nyhuis, 211 F.3d at 1343 ("A rejected claim does not merit rehearing on a different, but previously available, legal theory.")  For example, Petitioner argues in his reply brief Judge Bowen should not have accepted Petitioner's waiver of representation by counsel without inquiry into his competence. (See doc. no. 6, pp. 5-8.)  This is but a thinly veiled attempt to combine and re-litigate the arguments submitted by Ms. Kaplan on appeal that Ms. Maddox's motion for a psychiatric examination should have been granted and Petitioner should have been appointed new counsel rather than proceed *pro se*. (See doc. no. 4-1, pp. 41-50.)

To the extent Petitioner's non-specific reference to removal from the courtroom might suggest his removal at some time other than during the portion of sentencing described above, the record simply does not support such a contention.  Petitioner identifies no other time he was absent from the proceedings, and even if he had, that fact obviously would have been known to him well before his appeal, and such a claim would be barred here for failing to present an available claim on direct appeal.  See Lynn, 365 F.3d at 1232; Mills, 36 F.3d at 1055.  In addition, Petitioner has not argued, and the Court's review of the record does not reveal, any exception to excuse the procedural bar prohibiting review in these § 2255 proceedings of any such claim that was not, but could have been, raised on direct appeal.

In sum, Petitioner's claims in his § 2255 motion cannot be reviewed in these proceedings.  Based on a fully developed record, the Eleventh Circuit decided Petitioner's claims against him on direct appeal.  Petitioner has not argued, and the record does not

13

reveal, a valid exception to allow this Court to revisit his rejected claims or otherwise construe and consider a new claim that was not presented, but could have been, on direct appeal. Thus, the motion to dismiss should be granted.

## IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED** (doc. no. 4), Petitioner's § 2255 motion be **DISMISSED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 3rd day of May, 2019, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA